# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY J. PAGLIARA,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>        Defendant. | C.A. No. 1:16-cv-00193 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUBSTITUTE THE FEDERAL HOUSING FINANCE AGENCY AS PLAINTIFF

Howard N. Cayne
Asim Varma
David B. Bergman
ARNOLD & PORTER LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Howard.Cayne@aporter.com
Asim.Varma@aporter.com
David.Bergman@aporter.com

Robert J. Stearn, Jr. (DE Bar No. 2915)
Robert C. Maddox (DE Bar No. 5356)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
stearn@rlf.com
maddox@rlf.com

*Attorneys for Federal Housing Finance Agency*

July 18, 2016

RLF1 14842998v.1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1
SUMMARY OF ARGUMENT ................................................................................................ 1
STATEMENT OF FACTS ....................................................................................................... 2
ARGUMENT ............................................................................................................................ 3
I.   THE COURT SHOULD SUBSTITUTE FANNIE MAE'S CONSERVATOR, FHFA, IN PLACE OF THE SHAREHOLDER PLAINTIFF ....................................................... 3
  A.   HERA's Express Language Transfers "All Rights" of Fannie Mae's Shareholders to the Conservator. This Includes the Shareholder-Right to Inspect and Mandates Substitution of the Conservator as Plaintiff Here ................................................................................. 3
  B.   Plaintiff's Efforts to Evade the Plain Language of Section 4617(b) Are Meritless ............ 6
II   PLAINTIFF'S PURPORTED INVESTIGATION IS BARRED BY 12 U.S.C. § 4617(f) ................................................................................................................................ 10
CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cent. Laborers Pension Fund. v. News Corp.*,
　45 A.3d 139 (Del. 2012) ..................................................................................................5

*Chevron U.S.A., Inc. v. Nat'l Resources. Def. Council, Inc.*,
　467 U.S. 837 (1984) ........................................................................................................7

*In re Cmty. Bank of N. Virginia*,
　418 F.3d 277 (3d Cir. 2005) ............................................................................................5

*Compaq Comput. Corp. v. Horton*,
　631 A.2d 1 (Del. 1993) ...................................................................................................5

*Corley v. United States*,
　556 U.S. 303 (2009) ........................................................................................................8

*Esther Sadowsky Testamentary Tr. v. Syron*,
　639 F. Supp. 2d 347 (S.D.N.Y. 2009) ...................................................................4, 6, 11

*In re Fed. Home Loan Mortg. Corp. Deriv. Litig.*,
　643 F. Supp. 2d 790 (E.D. Va. 2009) ...............................................................3, 4, 6, 11

*In re Fed. Nat'l Mortg. Ass'n Secs., Derivative & ERISA Litig.*,
　629 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................................6, 11

*Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*,
　68 F. Supp. 3d 116 (D.D.C. 2014 ........................................................................4, 10, 11

*Hennepin Cty. v. Fannie Mae*,
　742 F.3d 818 (8th Cir. 2014) ..........................................................................................7

*Kaufman v. Comput. Assocs. Int'l, Inc.*,
　No. CIV.A. 699-N, 2005 WL 3470589 (Del. Ch. Dec. 13, 2005) ..................................9

*Kellmer v. Raines*,
　674 F.3d 848 (D.C. Cir. 2012) ..............................................................................3, 4, 6, 7

*La. Mun. Police Emps. Ret. Sys. v. FHFA*,
　434 F. App'x 188 (4th Cir. 2011) ................................................................................3, 4

*Montgomery Cty. v. FHFA*,
　776 F.3d 1247 (11th Cir. 2015) ......................................................................................7

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011)..........................................................................................................7

*Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*,
   No. CIV.A. 8674, 1987 WL 7533 (Del. Ch. Feb. 18, 1987).......................................................5

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ....................................................................................................4, 6

*Perry Capital LLC v. Lew*,
   70 F. Supp. 3d 208 (D.D.C. 2014) ..................................................................................... *passim*

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ......................................................................................................................8

*United States v. Walker*,
   149 F.3d 238 (3d Cir. 1998).........................................................................................................8

*W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*,
   914 A.2d 636 (Del. Ch. 2006).......................................................................................................9

*White v. Panic*,
   783 A.2d 543 (Del. 2001) .............................................................................................................8

**Statutes**

12 U.S.C. 1716 *et seq*....................................................................................................................5

12 U.S.C. § 1821(d)(2)(A)(i) .........................................................................................................4

12 U.S.C. § 4511 *et seq*..................................................................................................................2

12 U.S.C. § 4617(b)(2)(A) ..................................................................................................... *passim*

12 U.S.C. § 4617(b)(2)(A)(i) ............................................................................................3, 6, 8, 9

12 U.S.C. § 4617(b)(2)(B) ...........................................................................................................10

12 U.S.C. § 4617(b)(2)(B)(i) ....................................................................................................2, 10

12 U.S.C. § 4617(b)(2)(B)(iii) .....................................................................................................10

12 U.S.C. § 4617(b)(2)(J)(ii) ........................................................................................................10

12 U.S.C. § 4617(f).................................................................................................................10, 11

8 Del. Code § 220 ..................................................................................................................1, 5, 9

iv

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 .................................................................................................4

Housing and Economic Recovery Act of 2008 . Pub. L. No. 110-289, 122 Stat. 2654........................................................................................................................2

Plaintiff Pagliara asserts that 8 Del. Code § 220 gives him the right *as a shareholder* of the Federal National Mortgage Association ("Fannie Mae") to inspect its corporate books and records. As a matter of explicit federal law, however, the Federal Housing Finance Agency ("FHFA") as Conservator of Fannie Mae has succeeded to all the rights of Fannie Mae's shareholders, including those that Plaintiff Pagliara purports to assert here. Accordingly, FHFA, in its capacity as Conservator, respectfully moves to substitute for the Plaintiff in this action.

## NATURE AND STAGE OF THE PROCEEDINGS

On March 14, 2016, Pagliara filed suit in Delaware Chancery Court seeking an order requiring Fannie Mae to allow his proposed document inspection. On March 25, 2016, Fannie Mae removed this action to this Court. This case was thereafter stayed to allow the Judicial Panel on Multidistrict Litigation to determine whether to coordinate this action and several others for pretrial proceedings. On June 2, 2016, the Panel determined not to coordinate proceedings. The Court lifted the stay on July 14, 2016.

## SUMMARY OF ARGUMENT

The Court should substitute Fannie Mae's Conservator, FHFA, in place of Plaintiff Pagliara, who brings this suit solely as a shareholder of Fannie Mae. When it became Conservator, FHFA, "by operation of law, immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [Fannie Mae] and of any stockholder" of Fannie Mae. 12 U.S.C. § 4617(b)(2)(A). This statute, "by its unambiguous text, removes the power" of Fannie Mae's shareholders to exercise all their rights (including any document-inspection rights) "and gives [those rights] to FHFA." *See Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 231 (D.D.C. 2014), *appeal pending*, No. 14-5243 (D.C. Cir. filed Oct. 21, 2014). Accordingly, during conservatorship, FHFA alone holds and would have standing to pursue the shareholder rights Plaintiff purports to assert here.

**STATEMENT OF FACTS**

Fannie Mae, along with Freddie Mac (together, the "Enterprises"), is a federally chartered enterprise that facilitates liquidity and efficiency in the mortgage market. *See* Compl. ¶¶ 22, 25, 30. In July 2008, in the wake of a national crisis in the U.S. housing market, Congress created FHFA as the Enterprises' independent federal regulator by enacting the Housing and Economic Recovery Act of 2008 ("HERA"). Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*); *see also* Compl. ¶¶ 54, 55. HERA grants FHFA's Director authority to place Fannie Mae and Freddie Mac in conservatorship and specifies that at the inception of conservatorship, FHFA shall "by operation of law, immediately succeed to . . . all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A); *see also* Compl. ¶ 55. HERA also expressly empowers the Conservator to "[o]perate the [Enterprises] . . . with all the powers of the shareholders, the directors, and the officers" and to "conduct all business of the [Enterprises]." *Id.* § 4617(b)(2)(B)(i).

FHFA's Director placed both Enterprises into statutory conservatorships in September 2008; they remain in that status today. *See* Compl. ¶ 65. Shortly after becoming Conservator, FHFA entered into agreements, commonly known as the Senior Preferred Stock Purchase Agreements ("PSPAs"), on behalf of the Enterprises with the United States Department of the Treasury ("Treasury"). *Id.* ¶¶ 83-100. Through the PSPAs, Treasury agreed to provide billions of dollars for the Enterprises' continued operations in exchange for a comprehensive package of rights. On August 17, 2012, FHFA and Treasury executed a third amendment to the PSPAs ("the Third Amendment") that, among other things, changed the way the Enterprises pay dividends to Treasury in connection with its purchase of their preferred stock. *See id.* ¶¶ 119-20.

On January 19, 2016, Pagliara's counsel sent demands to both Fannie Mae and Freddie Mac seeking, as a shareholder in both Enterprises, to inspect their books and records in order to evaluate claims relating to the Third Amendment. *See* Compl., Exhibit A. These requests were denied. Pagliara then filed this suit seeking to compel access to Fannie Mae's records.

## ARGUMENT

**I. THE COURT SHOULD SUBSTITUTE FANNIE MAE'S CONSERVATOR, FHFA, IN PLACE OF THE SHAREHOLDER PLAINTIFF**

HERA unambiguously provides that FHFA as Conservator possesses "all rights, titles, powers, and privileges" of Fannie Mae's shareholders for the full duration of the conservatorship. 12 U.S.C. § 4617(b)(2)(A)(i). Accordingly, only the Conservator would have standing to bring the shareholder-complaint here.

**A. HERA's Express Language Transfers "All Rights" of Fannie Mae's Shareholders to the Conservator. This Includes the Shareholder-Right to Inspect and Mandates Substitution of the Conservator as Plaintiff Here.**

HERA's succession provision is far-reaching and clear. During conservatorship, the Conservator "succeed[s] to . . . *all* rights, titles, powers, and privileges . . . of any stockholder [of Fannie Mae] with respect to [Fannie Mae] and the assets of [Fannie Mae]." 12 U.S.C. § 4617(b)(2)(A) (emphasis added). By this provision, "Congress . . . transferred everything it could to the conservator." *Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) (alteration omitted) (quoting *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998). "[T]he plain meaning of the statute is that *all* rights previously held by [Fannie Mae's] stockholders . . . now belong exclusively to the FHFA." *In re Fed. Home Loan Mortg. Corp. Deriv. Litig.*, 643 F. Supp. 2d 790, 795 (E.D. Va. 2009), *aff'd sub nom La. Mun. Police Emps. Ret. Sys. v. FHFA*, 434 F. App'x 188 (4th Cir. 2011) (emphasis in original). HERA's succession provision thus "clearly demonstrates Congressional intent to transfer as much control of [the Enterprises] as possible to

3

the FHFA," *id*. at 797, and serves to "assure the expeditious and orderly protection of all who are interested in [Fannie Mae] by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d at 700 (interpreting a materially-identical provision in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183).[1]

In light of HERA's succession provision, courts have routinely permitted FHFA as Conservator to substitute itself in place of plaintiffs purporting to assert claims based on their status as shareholders of Fannie Mae and Freddie Mac. *See Kellmer*, 674 F.3d at 850-51 (affirming FHFA's substitution in place of Fannie Mae shareholder purporting to assert claims against former officers and directors and various third parties for, *inter alia*, aiding and abetting breach of fiduciary duty and negligence); *La. Mun. Police Emps. Ret. Sys.*, 434 F. App'x at 190-91 (affirming FHFA's substitution in place of Freddie Mac shareholders asserting claims against former officers and directors for breach of fiduciary duties, waste, and mismanagement); *Gail C. Sweeney Estate Marital Tr. v. U.S. Treasury Dep't*, 68 F. Supp. 3d 116, 117 (D.D.C. 2014) (granting FHFA motion to substitute in place of a Fannie Mae shareholder asserting claims for breach of fiduciary duty, abuse of control, waste, and mismanagement); *Esther Sadowsky Testamentary Tr. v. Syron,* 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009) (same, for Freddie Mac

---

[1] FIRREA provides that the Federal Deposit Insurance Corporation ("FDIC") "shall, as conservator or receiver, and by operation of law, succeed to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). "While case law adjudicating HERA-related disputes is generally sparse," courts interpreting it have sometimes relied on decisions addressing "nearly identical" provisions of FIRREA applicable to FDIC conservatorships. *Perry Capital*, 70 F. Supp. 3d at 220 (quoting *Nat'l Res. Def. Council, Inc. v. FHFA*, 815 F. Supp. 2d 630, 641 (S.D.N.Y. 2011)).

shareholder asserting similar claims). In the same manner, courts have also dismissed shareholder claims for lack of standing in light of HERA's succession provision. *See Perry Capital*, 70 F. Supp. 3d at 229 (dismissing shareholder claims for lack of standing in light of HERA's succession provision).[2]

Plaintiff's sole claim in this case seeks to enforce a demand, as a shareholder, for inspection of Fannie Mae's books and records, allegedly pursuant to 8 Del. Code § 220,[3] for the purpose of investigating some potential claim against the Conservator's appointed board of directors. *See* Compl. ¶¶ 207-212 & Ex. A. To the extent it applies here (Fannie Mae does not concede that it does), Section 220 codifies "a *shareholder's* common law right to inspect" a corporation's records, *Compaq Comput. Corp. v. Horton*, 631 A.2d 1, 3 (Del. 1993) (emphasis added), and under Section 220, "only 'stockholders' of a corporation have a right, provided they satisfy the requirements of that statute, to inspect the books and records." *Pan Ocean Navigation, Inc. v. Rainbow Navigation, Inc.*, No. CIV.A. 8674, 1987 WL 7533, at *2 (Del. Ch. Feb. 18, 1987); *see also Cent. Laborers Pension Fund. v. News Corp.*, 45 A.3d 139, 143 (Del. 2012) (Section 220 codifies a "[s]tockholder['s] . . . qualified right to inspect the corporation's books and records" that "originated at common law.").

Because the right to demand inspection of books and records under Delaware law belongs only to a shareholder, Plaintiff plainly seeks to enforce a shareholder "right[], title[],

---

[2] *See also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 293 n.6 (3d Cir. 2005) (granting motion to substitute where FDIC as receiver, pursuant to FIRREA, was "the true party in interest" after it had "succeeded to all 'rights, titles, powers, and privileges of . . . the insured depository institution'").

[3] To be clear, Fannie Mae is not a Delaware corporation; rather, it is a government sponsored enterprise that operates pursuant to Congressional charter. *See* 12 U.S.C. 1716 *et seq.* Nothing in that charter renders Fannie Mae subject to the statutory provisions of 8 Del. Code § 220.

5

power[] and privilege[]" now held by the Conservator alone. 12 U.S.C. § 4617(b)(2)(A)(i). Indeed, this conclusion accords with the multiple decisions holding that HERA's unequivocal succession language applies to all claims "fairly described as [relating to] a 'right[]' or 'power[]' of owning stock." *Kellmer*, 674 F.3d at 851(first alteration added) (affirming grant of FHFA's motion to substitute for derivative shareholder plaintiff); *see also Pareto*, 139 F.3d at 700 (interpreting FIRREA's materially similar succession provision as reflecting that "Congress has transferred . . . to the [conservator] . . . a stockholder's right, power, or privilege to demand corporate action.").[4] "HERA, by its unambiguous text," thus "removes the power" Plaintiff seeks to exercise from Fannie Mae's shareholders and "gives it to FHFA." *See Perry Capital*, 70 F. Supp. 3d at 231.

> B. **Plaintiff's Efforts to Evade the Plain Language of Section 4617(b) Are Meritless.**

Despite HERA's explicit statement that the Conservator succeeds to "all rights" of Fannie Mae's shareholders with respect to Fannie Mae, Plaintiff asserts that Section 4617(b)(2)(A)(i) "bars a stockholder from pursuing *only some* derivative claims on behalf of the corporation" and that it "does not bar direct claims" at all. Compl. ¶ 162 (emphasis added). Plaintiff contends further that because "this action is asserted directly against Fannie Mae," FHFA as Conservator has not "'succeeded' to 'all stockholder inspection rights,' thus . . . divesting [Plaintiff] of his

---

[4] *See also, e.g., In re Fed. Home Loan Mortg. Corp.*, 643 F. Supp. 2d at 795 ("As the FHFA argues, the plain meaning of the statute is that *all* rights previously held by Freddie Mac's stockholders . . . now belong exclusively to the FHFA."); *In re Fed. Nat'l Mortg. Ass'n Secs., Derivative & ERISA Litig.*, 629 F. Supp. 2d 1, 4 (D.D.C. 2009) ("HERA's plain language compels the conclusion that, as Conservator for Fannie Mae, only the FHFA has standing to pursue the claims asserted in these actions, and therefore its motion to substitute . . . must be granted immediately."); *Sadowsky*, 639 F. Supp. 2d at 350 ("[U]nder the plain language of HERA, 'all rights, titles, powers, and privileges' of [Fannie Mae's] shareholders are now vested in the FHFA. . . . FHFA is therefore the true party at interest in this case and should be substituted.").

6

statutory inspection rights." *Id.* This is incorrect, and the Court should decline to rewrite HERA to suit Plaintiff's desires. There is no basis for the court to omit the word "all" from "all rights."

An argument that Section 4617(b)(2)(A) does not cover "direct" claims cannot survive HERA's plain language. "Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of a statue." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011) (citation omitted); *see also Chevron U.S.A., Inc. v. Nat'l Resources. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter, for the court . . . must give effect to the unambiguously expressed intent of Congress"). Thus, when "[the] language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Id.* (citation omitted). Therefore, as the D.C. Circuit has recognized, the only interpretative tool needed to analyze HERA's succession provision and resolve whether FHFA may substitute for a stockholder is to adhere to Justice Frankfurter's admonition: "(1) Read the statute; (2) read the statute; (3) read the statute!" *Kellmer*, 674 F.3d at 850 (quoting Henry J. Friendly*, "*Mr. Justice Frankfurter and the Reading of Statutes, in Benchmarks" 196, 202 (1967)). When Congress conveyed "*all* rights . . . of any stockholder" with respect to Fannie Mae and its assets, Congress's plain words meant just that—*all* rights. *See id.* at 850-51 (emphasis added) (noting that "Congress has transferred everything it could" to the Conservator and declining, in light of the clear statutory language, to "delv[e] deep into pre-HERA common law [or] expound[] HERA's legislative history" to resolve the question of succession). *Cf. Montgomery Cty. v. FHFA*, 776 F.3d 1247, 1255 (11th Cir. 2015) (holding the "straightforward interpretation" of HERA's exemption from "all taxation" was that the Enterprises are "exempt from all state taxation"); *Hennepin Cty. v. Fannie Mae*, 742 F.3d 818, 822 (8th Cir. 2014)

7

(observing that, in HERA, "'all' means all" (citation omitted)). There is no "direct claims" exception to HERA's succession provision.

Indeed, to conclude otherwise and adopt Plaintiff's reading of "all rights" as meaning only "some rights" (i.e., the right to pursue a derivative claim) would render part of the statute meaningless. Absent succession to any shareholder rights, the Conservator can already pursue what would be derivative claims because those claims belong to the *company*, and not to any individual shareholder bringing a derivative action. *See, e.g.*, *White v. Panic*, 783 A.2d 543, 546 (Del. 2001) ("[T]he [derivative] cause of action belongs to the corporation, not the stockholder plaintiff."); *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("The claim pressed by the stockholder against directors or third parties is not his own but the corporation's." (internal quotation marks and citation omitted)). Because FHFA as Conservator has already "immediately succeed[ed] to . . . all rights, titles, powers, and privileges of [Fannie Mae]" as well as "of any stockholder," limiting the phrase "rights . . . of any stockholder" to derivative claims would add nothing to the Conservator's powers. 12 U.S.C. § 4617(b)(2)(A). "[O]ne of the most basic interpretative canons" is that a "statute should be construed so that effect is given to all its provisions." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *see also United States v. Walker*, 149 F.3d 238, 241 (3d Cir. 1998) (applying the "general rule of statutory construction" that "one part of a statute will not be interpreted in such a way as to make another part meaningless or superfluous."). Plaintiff's apparent interpretation would do just the opposite.

There is no basis to depart from the statute's plain text, which unambiguously provides that *all* shareholders' rights "with respect to the regulated entity and the assets of the regulated entity," 12 U.S.C. § 4617(b)(2)(A)(i)—not just its derivative claims—are transferred to FHFA during conservatorship. *See Perry Capital*, 70 F. Supp. 3d at 231 ("It is a slippery slope for the

8

Court to poke holes in, or limit, the plain language of [Section 4617(b)(2)(A)] especially when, as here, the plaintiffs have not asked the Court to weigh in on the statute's constitutionality.").

In all events, the purported distinction between a shareholder's right to pursue direct claims and a shareholder's right to pursue derivative claims has no bearing on the succession analysis here. "Fundamentally, the *right* to proceed under Section 220 to inspect books and records exists independently of any *claim* the stockholder might ultimately choose to bring." *Kaufman v. Comput. Assocs. Int'l, Inc.*, No. CIV.A. 699-N, 2005 WL 3470589, at *3 (Del. Ch. Dec. 13, 2005) (emphasis added); *accord W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 646 (Del. Ch. 2006). The rights to which FHFA has succeeded plainly include this "independent[]" right to inspect upon which Plaintiff purports to predicate his single claim. Whether Plaintiff labels his complaint as a direct *or* derivative one does not change the inescapable conclusion that HERA divested him of the underlying right he sues to enforce—that is, the "right" granted only to shareholders to inspect and copy Freddie Mac's books and records. 12 U.S.C. § 4617(b)(2)(A)(i).

Plaintiff's letter demanding access to Fannie Mae's books and records also asserts that HERA's succession provision does not transfer shareholder rights to the Conservator where "FHFA and/or Treasury have a conflict of interest." Compl., Ex. A at 8. To the extent Plaintiff is arguing that HERA's succession provision does not compel substitution of FHFA here because of a supposed "conflict of interest," Plaintiff is incorrect. HERA contains no "conflict of interest" exception. As the court in *Perry Capital* explained in considering claims brought by Enterprise shareholders challenging the Third Amendment, adoption of a conflict of interest exception to Section 4617(b)(2)(A)(i) "[w]ould [c]ontravene the [p]lain [l]anguage of the

9

[s]tatute" which provides "no [conflict-of-interest] qualification for its bar." 70 F. Supp. 3d at 230-31. Regardless, no conflict exists and Plaintiff did not identify one.

## II.  PLAINTIFF'S PURPORTED INVESTIGATION IS BARRED BY 12 U.S.C. § 4617(f)

The substitution of the Conservator for Pagliara is independently compelled under HERA's jurisdictional withdrawal provision, 12 U.S.C. § 4617(f), which bars this and every other federal and state court from "tak[ing] any action to restrain or affect the exercise of powers or functions of the [FHFA] as a conservator." *Id.* As discussed above, under HERA, FHFA alone is authorized during the conservatorship to "[o]perate the regulated entity." *Id.* § 4617(b)(2)(B). Consequently, if there is to be any investigation into Plaintiff's alleged claims of mismanagement or misconduct, the authority and power to conduct such an investigation falls within the Conservator's exclusive authority and powers to "operate [Fannie Mae] with all the powers of the shareholders, the directors, and the officers," to "conduct all business of [Fannie Mae]," and to "perform all functions of [Fannie Mae] consistent with the appointment as conservator." *Id.* § 4617(b)(2)(B)(i),(iii). Additionally, HERA provides that only the Conservator can 'determine[] [what] is in the best interests" of the Enterprises. *Id.* § 4617(b)(2)(J)(ii).

To allow Plaintiff to exercise a right no longer held by Fannie Mae's shareholders, *viz.*, the right to access the books and records of Fannie Mae for the purpose of conducting an investigation into its operations, or for any other purpose, "would interfere with and potentially usurp precisely the powers granted to the FHFA by HERA." *Sweeney*, 68 F. Supp. 3d at 126 (quoting *Sadowsky*, 639 F. Supp. 2d at 351). Section 4617(f) thus provides "a second, independent basis for . . . grant[ing] the Conservator's motion to substitute." *Id.* at 125-26 (decision on whether to bring suit arising from the sale of Fannie Mae's assets during

10

conservatorship is "plainly the type of business decision Congress entrusted to the Conservator in HERA").

Indeed, in multiple decisions granting FHFA's motions to substitute the Conservator for Fannie Mae or Freddie Mac shareholders, courts have held that Section 4617(f) also bars the shareholder from continuing the action without the Conservator's substitution. *See, e.g.*, *id.* at 119 (granting substitution in part because Section 4617(f) "suggests that the Court may not be empowered to authorize plaintiff to pursue litigation that the Conservator has declined to pursue"); *Sadowsky*, 639 F. Supp.2d at 350 (Without substitution, suit would violate Section 4617(f) "since maintenance of this suit with the shareholders acting as Plaintiffs would be inconsistent with the Conservator's exercise of its statutory purposes."); *In re Fed. Nat'l Mortg. Ass'n*, 629 F. Supp.2d at 4 n.4 ("[A]llowing plaintiffs to continue to pursue derivative claims independent of FHFA would require this Court to take action that would 'restrain or affect' FHFA's discretion" in violation of § 4617(f).); *In re Fed. Home Loan Mortg. Corp.*, 643 F. Supp. 2d at 797 (Section 4617(f) "clearly demonstrates Congressional intent to transfer as much control of Freddie Mac as possible to the FHFA, including any right to sue on behalf of the corporation."). So too here: allowing Plaintiff to pursue his investigation would "be inconsistent with the Conservator's exercise of its statutory power" and, therefore, permitting Plaintiff to proceed with this suit would violate Section 4617(f). *Sadowsky*, 639 F. Supp. 2d at 350.

*[Remainder of page intentionally left blank]*

## CONCLUSION

For the foregoing reasons, the Court should substitute the FHFA as Conservator in place of the current Plaintiff in this suit.

Dated: July 18, 2016
Wilmington, Delaware

Respectfully submitted,

*/s/ Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (DE Bar No. 2915)
Robert C. Maddox (DE Bar No. 5356)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
stearn@rlf.com
maddox@rlf.com

Howard N. Cayne
Asim Varma
David Bergman
Arnold & Porter LLP
601 Massachusetts Avenue
Washington, DC 20001
(202) 942-5000
Howard.Cayne@aporter.com
Asim.Varma@aporter.com
David.Bergman@aporter.com

*Attorneys for the Federal Housing Finance Agency*